UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| ROADCASE.COM, INC., <br><br> Plaintiff, <br><br> v. <br><br> PROFORWARD, INC.; and <br> BLUE-GRACE LOGISTICS LLC, <br><br> Defendants. | Case No. 8:26-cv-2026 |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Roadcase.com, Inc. ("**Roadcase**") brings this action for cargo loss and damage arising under the Carmack Amendment, 49 U.S.C. § 14706, breach of contract, and breach of the implied covenant of good faith and fair dealing against ProForward, Inc. ("**ProForward**") and Blue-Grace Logistics LLC ("**BlueGrace**"), and alleges as follows:

**NATURE OF THE ACTION**

1. Roadcase brings this Complaint against ProForward, a motor carrier that accepted a shipment of 38 road cases containing 76 motorized chain hoists for interstate transport from Phoenix, Arizona to Newbury Park, California, and Blue-Grace, the freight broker that arranged the shipment for Roadcase and contractually agreed to provide transportation-arrangement and cargo-claim assistance services. Through ProForward's failure to properly secure the cargo,

1

Defendants' failure to resolve Roadcase's cargo claim in good faith as required by the governing agreements, and BlueGrace's breaches of its contractual obligations, Roadcase has suffered damages, including the total loss of the shipment valued at no less than $552,751.86 and additional damages to be proven at trial.

## THE PARTIES

2. Roadcase.com is a private corporation incorporated in the State of Arizona, with its principal place of business at 7205 W. Buckeye Rd., Suite 400, Phoenix, Arizona 85043. Roadcase is engaged in the business of manufacturing road cases and related products.

3. ProForward is a corporation with addresses at 1600 N. Kansas St., El Paso, Texas 79902 and 17887 Slover Ave., Bloomington, California 92316, as reflected in the relevant transportation documents. Upon information and belief, ProForward is a motor carrier of property authorized by the Federal Motor Carrier Safety Administration ("FMCSA") to conduct operations in interstate commerce, holding DOT No. 1678243.

4. BlueGrace is a Florida limited liability company doing business as BlueGrace, with its principal place of business at 2846 S. Falkenburg Rd., Riverview, Florida 33578. Upon information and belief, BlueGrace is an FMCSA-licensed property broker, MC 304386/DOT 2222378.

2

## JURISDICTION AND VENUE

5.     This Court has original federal question jurisdiction over Count I pursuant to 28 U.S.C. § 1331, as this action arises under the Carmack Amendment, 49 U.S.C. § 14706. This Court also has jurisdiction under 28 U.S.C. § 1337 as an action arising under an Act of Congress regulating commerce, with the amount in controversy exceeding $10,000, exclusive of interest and costs.

6.     This Court has supplemental jurisdiction over Counts II through VI pursuant to 28 U.S.C. § 1367(a) because the state-law claims are so related to the federal Carmack Amendment claim that they form part of the same case or controversy under Article III of the United States Constitution.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and the parties' mandatory forum-selection clauses. The Agreement provides that it is governed by Florida law and that "[a]ny legal action arising under or pursuant to this Agreement shall be brought and maintained exclusively and only in the state or federal courts located in Hillsborough County, Florida." The BlueGrace Customer Agreement likewise provides that Florida law applies and that suit must be brought in Hillsborough County, Florida. Hillsborough County is located within the United States District Court for the Middle District of Florida, and valid forum-selection clauses are enforceable under federal law and given controlling weight absent exceptional circumstances. See 28 U.S.C. § 1391; *Atl. Marine Constr.*

*Co. v. U.S. Dist. Court*, 571 U.S. 49 (2013); *Lindner v. Biscayneamericas Advisers L.L.C.*, 214 F. Supp. 3d 1307 (S.D. Fla. 2016).

## FACTUAL BACKGROUND
### The Parties and Their Relationship

8.      At all relevant times, BlueGrace was a Florida limited liability company and FMCSA-licensed property broker, MC 304386 / DOT 2222378, with its principal place of business at 2846 S. Falkenburg Rd., Riverview, Florida 33578.

9.      BlueGrace acted as a freight broker to arrange for the transportation of freight on behalf of its customers, including Roadcase.

10.      On or about August 26, 2025, Roadcase submitted a credit application to BlueGrace and agreed to BlueGrace's Terms and Conditions (the "**BlueGrace Customer Agreement**"), a copy of which is attached as **Exhibit A**.

11.      Under the BlueGrace Customer Agreement, BlueGrace agreed to arrange for the transportation of shipments tendered by Roadcase.

12.      BlueGrace further represented and warranted that it was authorized to provide the services and agreed to comply with all federal, state, and local laws applicable to its provision of the services.

13.      The BlueGrace Customer Agreement provides that the Servicing Carrier's governing General Rules Tariff or Broker-Carrier Agreement entered into by the Servicing Carrier and BlueGrace will govern the legal relationship between

4

all parties when applicable and will take precedence over the BlueGrace Customer Agreement.

14. Under Section 5(c) of the BlueGrace Customer Agreement, BlueGrace agreed to use commercially reasonable efforts to assist Roadcase in filing claims for cargo loss, damage, destruction, or delay with motor carriers.

15. Under Section 8 of the BlueGrace Customer Agreement, Florida law applies and suit must be brought in Hillsborough County, Florida.

16. ProForward held itself out as a motor carrier authorized by FMCSA to conduct operations and provide service in interstate commerce for general commodities between points in the United States.

17. On or about July 14, 2025, BlueGrace and ProForward entered into a Contract Carrier Agreement (Truckload) (the "Agreement"), pursuant to which ProForward agreed to pick up, transport, deliver, and provide transportation services for freight tendered by BlueGrace on behalf of BlueGrace's customers. A copy of the Agreement is attached as **Exhibit B**.

18. Under Section 5 of the Agreement, ProForward expressly agreed that BlueGrace's customers, including Roadcase, are intended third-party beneficiaries of the Agreement.

19. Under the Agreement, ProForward agreed to assume the liability of an interstate motor carrier under 49 U.S.C. § 14706 for all freight transported under the Agreement, and that the Carmack Amendment applies to all shipments.

20. Under Section 6 of the Agreement, ProForward expressly agreed:

> Carrier shall request and obtain instructions concerning all handling, securing and product or freight protection requirements (heat, cold, temperature maintenance, moisture, securement, etc.) of each shipment, including delivery schedules and appointments or appointment windows, on the Rate or Load Confirmation Sheet from Broker, on the bill of lading from the consignor, or otherwise.

21. Further:

> Carrier is responsible for ensuring that all freight is properly blocked and braced for transportation unless tendered to Carrier in a pre-loaded, sealed trailer, and Carrier has been instructed not to break the seal(s) on the trailer, which fact must be noted on the bill of lading. Carrier is responsible to determine that the goods being shipped are all present and in apparent good order and condition, to the extent that such is ascertainable through a visual examination of the exterior of the goods shipped, before loading. In the event that they are not Carrier shall note such fact on the face of the bill of lading for the shipment and contact Broker for further instructions.

Agreement, § 6.

22. Under Section 14 of the Agreement, "Carrier shall pay or settle all claims for cargo loss, damage or delay within sixty (60) days from the date of receipt of notice of such claim. . . . Carrier's failure to acknowledge and respond to

a cargo claim within thirty (30) days of presentation by Broker or Broker's customer shall be construed as an admission of liability for that claim."

23.     Under Section 23 of the Agreement, Florida law governs, and any legal action arising under or pursuant to the Agreement must be brought exclusively in the state or federal courts located in Hillsborough County, Florida.

## The Shipment

24.     On or about January 27, 2026, BlueGrace tendered a shipment to ProForward on behalf of Roadcase for interstate transportation from Roadcase's facility at 7205 W. Buckeye Rd., Suite 400, Phoenix, Arizona 85043, to Chainlync at 1167 Lawrence Dr., Newbury Park, California 91320.

25.     The shipment was documented on Bill of Lading No. BG1085496826, pickup date January 27, 2026, identifying the carrier as ProForward, Inc.

26.     The shipment consisted of 38 handling units (cases) weighing approximately 14,000 pounds, described as road cases containing 76 motorized chain hoists. The motorized chain hoists are highly engineered, safety-critical equipment used in entertainment rigging.

## Loading and Departure

27.     On January 27, 2026, ProForward's driver arrived at Roadcase's Phoenix, Arizona facility to accept and transport the shipment.

7

28.     Upon arrival, ProForward's driver had only two load straps available, one of which was not usable. ProForward's driver was inadequately equipped to secure the load for interstate transportation.

29.     Because ProForward failed to provide adequate securement equipment, Roadcase provided its own straps to secure the shipment within the trailer.

30.     Roadcase personnel secured the cargo with double straps for every two rows, approximately every 10 feet of cases. Roadcase's Director of Operations ensured the load was properly secured before departure.

31.     Photographs taken before departure show the cargo strapped and secured within the trailer at the time it left Roadcase's facility.

32.     Video surveillance from Roadcase's facility confirms that ProForward's driver inspected the load, satisfied himself as to its securement, closed the trailer doors, and departed the facility with the shipment.

33.     ProForward's driver did not note any exceptions or deficiencies on the Bill of Lading regarding the condition or securement of the cargo at the time of pickup.

34.     ProForward's driver did not request or obtain instructions concerning securing or product or freight protection requirements.

**The Cargo Loss During Transit**

35.    Later on January 27, 2026, at approximately 10:00 p.m., an unknown individual contacted Chainlync after discovering road cases and chain hoists scattered on the freeway approximately 10 miles west of Blythe, California.

36.    Chainlync's owner notified Roadcase of the incident and drove to the scene to locate cases and hoists.

37.    Roadcase contacted BlueGrace, which in turn contacted ProForward's driver. The driver then pulled over and photographed cases inside the trailer, revealing that the shipment had become completely unsecured during transit.

38.    ProForward's driver turned around to retrieve the fallen cases but failed to resecure the remaining load within the trailer before doing so. As a direct and proximate result of this failure, an additional 10 cases fell from the trailer and sustained damage.

39.    After retrieving and reloading such cases and hoists as could be recovered—except for three cases with hoists that were never recovered—ProForward's driver cross-loaded the remaining cases with hoists onto a second trailer. The driver again failed to secure the cases within the second trailer.

40.    When the second trailer arrived at the destination in Newbury Park, California, the remaining cases were unsecured inside the trailer and the trailer door was severely damaged.

41.    In total, three road cases containing three motorized chain hoists were never recovered. The remaining 35 road cases were retrieved and delivered in a severely damaged condition.

### Total Loss of the Shipment

42.    The road cases sustained irreparable damage from collisions during transport and from falling onto the freeway at highway speeds.

43.    The motorized chain hoists are highly engineered, safety-critical equipment used in entertainment rigging applications. As a result of the events described herein, the hoists are no longer suitable for their intended use without cost-prohibitive inspection, repair, and recertification, if such repair is even possible.

44.    The entire shipment constitutes a total loss.

### Notice and Demand

45.    On or about January 30, 2026, a cargo claim was submitted through BlueGrace identifying ProForward as the responsible carrier, DOT No. 1678243, referencing Bill of Lading No. BG1085496826, and asserting a claim for the damaged shipment.

46.    BlueGrace initially declined Roadcase's cargo claim based on alleged securement deficiencies, including alleged failures by Roadcase, and Roadcase disputed that declination.

10

47. On March 11, 2026, BlueGrace acknowledged that its initial declination had been issued prematurely and stated that further evaluation was warranted based on the additional information provided by Roadcase.

48. In the same correspondence, BlueGrace stated that it was willing to assist Roadcase with submitting and processing a cargo claim directly with the motor carrier, but asserted that ProForward's total liability coverage was limited to $100,000 except where Roadcase had procured additional coverage.

49. BlueGrace's assertion of a $100,000 total liability coverage limitation conflicted with the Agreement's provisions that ProForward assumed Carmack liability for shipments transported under the Agreement and that no released value conditions apply against BlueGrace or its customers.

50. The Agreement also stated that ProForward agreed to have a minimum of $100,000 in total liability coverage, not that its liability was limited to whatever coverage it secured.

51. As a result of BlueGrace's premature declination, incomplete claim assistance, and erroneous limitation position, Roadcase was required to pursue ProForward and the assigned claims administrator directly, clarify the status and timing of the claim presentation, and incur additional expense and delay in attempting to recover for the cargo loss.

52.     More than sixty (60) days passed after notice of Roadcase's cargo claim without any good-faith resolution of the claim under Section 14 of the Agreement. ProForward did not pay or settle the claim, and BlueGrace frustrated the contractual claims-resolution process by prematurely declining the claim and advancing a liability-limitation position inconsistent with the Agreement.

53.     On May 4, 2026, Roadcase transmitted a formal demand letter to ProForward demanding payment of the total claim amount of $552,751.86, representing the replacement cost of 76 motorized chain hoists based on current market pricing and replacement quote, the replacement cost of 38 road cases based on current market pricing and original invoices, and associated shipping costs.

54.     Roadcase's demand letter required ProForward to respond and remit full payment by June 5, 2026, and advised that failure to acknowledge or respond to the cargo claim within 30 days of presentation may be construed as an admission of liability under Section 14 of the Agreement.

55.     ProForward has failed to pay Roadcase's cargo claim.

56.     More than thirty (30) days have elapsed since Roadcase's May 4, 2026 demand letter was transmitted to ProForward. ProForward has failed to acknowledge and respond to Roadcase's cargo claim within thirty (30) days of its presentation, as required by Section 14 of the Agreement.

12

57. Under the express terms of the Agreement, ProForward's failure to acknowledge and respond to the cargo claim within thirty (30) days of presentation shall be construed as an admission of liability for that claim.

## COUNT I

**Carmack Amendment Claim Against ProForward (49 U.S.C. § 14706)**

58. Roadcase incorporates by reference the allegations in each of the preceding paragraphs 1 through 57 as though fully set forth herein.

59. At all relevant times, ProForward was a motor carrier as defined by 49 U.S.C. § 13102(14) and was subject to the provisions of the Carmack Amendment, 49 U.S.C. § 14706.

60. ProForward was the receiving and delivering motor carrier for the interstate shipment from Phoenix, Arizona to Newbury Park, California, documented under Bill of Lading No. BG1085496826.

61. Roadcase delivered, or caused to be delivered, the shipment consisting of 38 road cases containing 76 motorized chain hoists to ProForward in good order and condition. The Bill of Lading contains no notations of exception as to the condition of the goods at the time of tender.

62. The shipment was lost, damaged, and/or destroyed while in ProForward's possession, care, custody, and control. The goods arrived at

destination in a damaged, unsecured, and incomplete condition, with three cases and hoists unrecovered and the remaining items constituting a total loss.

63.     As a direct and proximate result of the loss and damage to the shipment while in ProForward's possession, Roadcase has suffered actual loss and injury in an amount to be proven at trial, presently estimated to be at least $552,751.86, plus recoverable costs, interest, and attorneys' fees.

64.     Under 49 U.S.C. § 14706, a motor carrier is liable for the actual loss or injury to property caused by the carrier. ProForward is liable to Roadcase for the full actual loss of the shipment.

## COUNT II

### Breach of Contract Carrier Agreement Against ProForward

(In the Alternative, or to the Extent Not Preempted
by the Carmack Amendment)

65.     Roadcase incorporates by reference the allegations in each of the preceding paragraphs 1 through 64 as though fully set forth herein.

66.     On or about July 14, 2025, BlueGrace and ProForward entered into the Agreement, pursuant to which ProForward agreed to provide motor carrier transportation services for freight tendered by BlueGrace on behalf of BlueGrace's customers.

67.     Under Section 5 of the Agreement, ProForward expressly agreed that BlueGrace's customers are intended third-party beneficiaries of the Agreement.

14

68.     Roadcase is a customer of BlueGrace and an intended third-party beneficiary of the Agreement with standing to enforce its terms against ProForward.

69.     Under the Agreement, ProForward assumed numerous obligations with respect to the transportation of freight, including but not limited to the following:

    a.  To pick up, transport, and deliver shipments to the specified consignee and destination at the specified time or within a reasonable time (Sections 1 and 6);

    b.  To make arrangements for appropriate personnel and equipment dedicated to BlueGrace's use while transporting freight (Section 2);

    c.  To comply with all laws and regulations affecting its performance, and to be responsible for all acts, omissions, and violations by itself, its employees, contractors, or agents (Section 4);

    d.  To request and obtain instructions concerning handling, securing, and freight protection requirements at or before receipt of each shipment, and to be solely liable for damages if it fails to do so or fails to comply (Section 6);

e. To ensure all freight is properly blocked and braced for transportation (Section 6);

f. To determine that goods are all present and in apparent good order and condition through visual examination before loading, and to note exceptions and contact BlueGrace if they are not (Section 6);

g. To comply with BlueGrace customer requirements relating to transportation and handling of freight, including handling of shipments (Section 7);

h. To assume the liability of an interstate motor carrier under 49 U.S.C. § 14706 for all freight transported under the Agreement (Section 8);

i. To defend, indemnify, and hold BlueGrace and its customers harmless from claims and losses, including cargo loss and damage, arising from ProForward's operations under the Agreement, including attorneys' fees and costs (Section 12);

j. To pay or settle all claims for cargo loss, damage, or delay within 60 days from receipt of notice (Section 14); and

k. That no released value conditions apply against BlueGrace or its customers (Section 14).

16

70.     ProForward breached the Agreement in the following respects, among others:

a. ProForward arrived at Roadcase's facility with inadequate securement equipment, having only two load straps (one unusable), failing to provide appropriate equipment for the transportation of freight;

b. ProForward accepted the shipment without objection despite its failure to provide its own adequate securement equipment;

c. ProForward failed to maintain, inspect, and resecure the cargo during transit, resulting in the cargo becoming completely unsecured and falling from the trailer onto a public freeway;

d. After cargo fell from the trailer, ProForward's driver failed to resecure the remaining load before attempting retrieval, causing an additional 10 cases to fall and sustain damage;

e. ProForward transferred and reloaded remaining cargo onto a second trailer without securing the cases;

f. ProForward failed to deliver the entire shipment in good order and condition, with three cases and hoists never recovered and the remainder constituting a total loss;

g.  ProForward failed to pay or settle Roadcase's cargo claim within 60 days from receipt of notice, or at all.

71.    As a direct and proximate result of ProForward's breaches of the Agreement, Roadcase has suffered damages in an amount to be proven at trial, presently estimated to be at least $552,751.86, plus recoverable costs, interest, and attorneys' fees.

72.    Under Section 14(B) of the Agreement, if Roadcase succeeds in recovering a claim against ProForward in court, Roadcase is entitled to its expenses incurred in collecting the claim, including reasonable attorneys' fees, costs, and interest at the legal rate from the date of delivery or scheduled delivery.

73.    Under Section 14(E) of the Agreement, cargo claim damages are to be calculated based on the shipper or consignee invoice price, not production cost or a lesser measure, and investigation costs are also recoverable.

## COUNT III
### Breach of Contract Against BlueGrace
### (BlueGrace Customer Agreement)

74.    Roadcase incorporates by reference the allegations in each of the preceding paragraphs 1 through 73 as though fully set forth herein.

75.    The BlueGrace Customer Agreement is a valid and enforceable contract between Roadcase and BlueGrace.

76.    Roadcase performed its obligations under the BlueGrace Customer Agreement, including by providing shipment information, tendering the shipment for transportation arranged by BlueGrace, submitting and supporting its cargo claim, and otherwise cooperating in the claims process.

77.    BlueGrace materially breached the BlueGrace Customer Agreement by failing to use commercially reasonable efforts to assist Roadcase in filing, presenting, supporting, and processing the cargo claim with ProForward and any applicable motor carrier claims administrator or insurer.

78.    BlueGrace further breached the BlueGrace Customer Agreement by prematurely declining Roadcase's cargo claim, requiring Roadcase to contest that declination and provide additional information before BlueGrace acknowledged that further evaluation was warranted.

79.    BlueGrace further breached the BlueGrace Customer Agreement by asserting that ProForward's liability coverage was limited to $100,000, despite the Agreement's provisions that ProForward assumed Carmack liability and that no released value conditions apply against BlueGrace or its customers.

80.    To the extent BlueGrace's negligent acts or omissions in arranging the shipment, transmitting the claim, processing the claim, communicating with ProForward, or communicating with any claims administrator or insurer caused

19

cargo loss, claim impairment, delay, or unrecovered loss, BlueGrace is liable under the BlueGrace Customer Agreement for those damages.

81.     As a direct and proximate result of BlueGrace's breaches, Roadcase has suffered actual and direct damages in an amount to be proven at trial, including additional expenses, delay, and claim impairment incurred in pursuing recovery from ProForward and the assigned claims administrator, and the unpaid cargo loss to the extent caused by BlueGrace's breaches.

## COUNT IV
### Breach of Implied Covenant of Good Faith and Fair Dealing Against ProForward
(In the Alternative, or to the Extent Not Preempted by the Carmack Amendment)

82.     Roadcase incorporates by reference the allegations in each of the preceding paragraphs 1 through 81 as though fully set forth herein.

83.     The Agreement is governed by Florida law. Florida law recognizes an implied covenant of good faith and fair dealing in every contract to protect the parties' reasonable contractual expectations. See *QBE Ins. Corp. v. Chalfonte Condo. Apt. Ass'n*, 94 So. 3d 541, 548 (Fla. 2012).

84.     The duty of good faith and fair dealing was implied in the Agreement, including with respect to ProForward's express obligations under Section 14 to pay or settle all claims for cargo loss, damage, or delay within sixty (60) days from

20

receipt of notice and to acknowledge and respond to cargo claims presented by BlueGrace or BlueGrace's customers.

85.    ProForward breached the implied covenant of good faith and fair dealing by failing and refusing to engage in good faith efforts to evaluate, acknowledge, respond to, pay, settle, or otherwise resolve Roadcase's cargo claim pursuant to Section 14 of the Agreement, thereby frustrating Roadcase's reasonable contractual expectations as an intended third-party beneficiary of the Agreement.

86.    As a direct and proximate result of ProForward's breach of the implied covenant of good faith and fair dealing, Roadcase has suffered damages in an amount to be proven at trial, including expenses and delay incurred in pursuing recovery, recoverable costs, interest, and attorneys' fees.

## COUNT V
### Breach of Implied Covenant of Good Faith and Fair Dealing Against BlueGrace

87.    Roadcase incorporates by reference the allegations in each of the preceding paragraphs 1 through 86 as though fully set forth herein.

88.    BlueGrace is a party to the Agreement, and the BlueGrace Customer Agreement provides that the Servicing Carrier's governing General Rules Tariff or Broker-Carrier Agreement entered into by the Servicing Carrier and BlueGrace

will govern the legal relationship between all parties when applicable and will take precedence over the BlueGrace Customer Agreement.

89. The duty of good faith and fair dealing was implied in the Agreement and the BlueGrace Customer Agreement, including with respect to BlueGrace's performance of claim-related obligations and its implementation of Section 14 of the Agreement for Roadcase's cargo claim.

90. BlueGrace breached the implied covenant of good faith and fair dealing by failing to engage in good faith efforts to resolve Roadcase's cargo claim pursuant to Section 14 of the Agreement, including by prematurely declining Roadcase's claim, asserting an erroneous liability-limitation position, failing to coordinate in good faith with ProForward or any claims administrator or insurer to secure timely payment or settlement, causing Roadcase to pursue recovery directly from ProForward and the assigned claims administrator, and failing to enforce Section 14 of the Agreement.

91. As a direct and proximate result of BlueGrace's breach of the implied covenant of good faith and fair dealing, Roadcase has suffered damages in an amount to be proven at trial, including additional expenses, delay, claim impairment, and unrecovered cargo-loss damages to the extent caused by BlueGrace's breach.

## COUNT VI

### Declaratory Judgment Against ProForward
### (Florida Declaratory Judgment Act, Fla. Stat. § 86.011 et seq.)

92.     Roadcase incorporates by reference the allegations in each of the preceding paragraphs 1 through 92 as though fully set forth herein.

93.     Under Florida's Declaratory Judgment Act, Fla. Stat. § 86.011 et seq., any person whose rights, status, or other equitable or legal relations are affected by a contract may obtain a declaration of rights, status, or other equitable or legal relations thereunder.

94.     An actual, present, and justiciable controversy exists between Roadcase and ProForward regarding whether ProForward's failure to acknowledge or respond to Roadcase's cargo claim within thirty (30) days of presentation constitutes an admission of liability under Section 14 of the Agreement.

95.     On or about July 14, 2025, BlueGrace and ProForward entered into the Agreement, which governs ProForward's obligations as a motor carrier for freight tendered by BlueGrace on behalf of its customers, including Roadcase.

96.     Under Section 5 of the Agreement, Roadcase is an intended third-party beneficiary with standing to enforce the Agreement's terms against ProForward.

23

97.    Section 14 of the Agreement expressly provides: "Carrier's failure to acknowledge and respond to a cargo claim within thirty (30) days of presentation by Broker or Broker's customer shall be construed as an admission of liability for that claim."

98.    On May 4, 2026, Roadcase transmitted a formal demand letter to ProForward asserting its cargo claim in the amount of $552,751.86 and expressly advising ProForward that failure to acknowledge or respond to the cargo claim within 30 days of presentation may be construed as an admission of liability under Section 14 of the Agreement.

99.    More than thirty (30) days have elapsed since Roadcase presented its cargo claim to ProForward. ProForward has failed to acknowledge and respond to Roadcase's cargo claim within the thirty-day period prescribed by Section 14 of the Agreement.

100.    By virtue of ProForward's failure to acknowledge or respond to Roadcase's cargo claim within thirty (30) days of presentation, ProForward has admitted liability for Roadcase's claim pursuant to the express terms of Section 14 of the Agreement.

101.    Roadcase is entitled to a judicial declaration that ProForward has admitted liability for Roadcase's cargo claim as a result of its failure to

24

acknowledge or respond to the claim within the thirty-day period required by Section 14 of the Agreement.

102.   Such a declaration will serve the useful purpose of clarifying and settling the legal relations between the parties with respect to ProForward's liability for the cargo loss, and will afford relief from the uncertainty and insecurity created by ProForward's non-compliance with the Agreement's claims-resolution provisions.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Roadcase.com, Inc. respectfully requests that this Court enter judgment in its favor and against Defendants ProForward, Inc. and Blue-Grace Logistics LLC as follows:

A.   Against ProForward, compensatory damages in an amount to be proven at trial, presently estimated to be at least $552,751.86, representing the full actual loss of the shipment including replacement cost of 76 motorized chain hoists, replacement cost of 38 road cases, and associated shipping costs;

B.   Actual and direct damages against BlueGrace in an amount to be proven at trial arising from BlueGrace's breaches of the BlueGrace Customer Agreement;

C.   Prejudgment interest at the legal rate from the date of delivery or scheduled delivery of the shipment;

D.     Post-judgment interest as provided by law;

E.     As to ProForward, reasonable attorneys' fees and costs of suit, including expenses incurred in collecting this claim, pursuant to the Contract Carrier Agreement Section 14(B) and applicable law;

F.     As to ProForward, investigation costs pursuant to the Contract Carrier Agreement Section 14(E);

G.     Actual and direct damages against ProForward and BlueGrace in an amount to be proven at trial arising from their breaches of the implied covenant of good faith and fair dealing;

H.     A judicial declaration, pursuant to Florida's Declaratory Judgment Act, Fla. Stat. § 86.011 et seq., that ProForward has admitted liability for Roadcase's cargo claim by virtue of its failure to acknowledge or respond to the claim within thirty (30) days of presentation, as required by Section 14 of the Contract Carrier Agreement;

I.     Such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Roadcase.com, Inc. hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 15 day of July, 2026.

QUARLES & BRADY LLP


By: ___/s/ *Zachary S. Foster*___
Zachary S. Foster
Florida Bar No. 111980
101 E. Kennedy Blvd, Suite 3400
Tampa, FL 33602
813-387-0300
zachary.foster@quarles.com


Coree E. Neumeyer, **Lead Counsel**
(*phv pending)*
Daniel J.F. Peabody (*phv pending)*
Quarles & Brady LLP
One Renaissance Square
Two North Central Avenue
Suite 600
Phoenix, AZ  85004-2322
602-229-5200
*Attorneys for Plaintiff*

27